Argued and submitted August 27, reversed and remanded October 13, 1999

## STATE OF OREGON,
*Appellant,*

*v.*

## THOMAS HOEHNE,
*Respondent.*

## (98CR0423; CA A103793)

989 P2d 469

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Peter Gartlan, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

In this criminal case, defendant was charged with possession of methamphetamine, a controlled substance. ORS 475.992(4). The state appeals from a pretrial order suppressing defendant's self-incriminating statements to a police officer. Because we agree with the state that the trial court's rationale for suppression was erroneous, we reverse and remand.

The following facts were either expressly or implicitly found by the trial court in summary written findings. In January 1998, defendant was on supervised probation in Curry County for criminal trespass and menacing. In early January, defendant gave a urine sample to his probation officer, Lillie, that tested positive for drugs. On January 28, Lillie received information that defendant was associating with known drug users or distributors. Lillie asked defendant to submit to another urine test for drug use. Defendant complied, and the second sample also tested positive for the presence of drugs. Lillie met with defendant after the second sample was taken. Defendant told Lillie that he was trying to stop using drugs. Lillie told defendant that a first step toward that goal would be to provide the police with information concerning drug use and sales within the community.[1] On the same day, defendant met with Detective Plaster. Plaster administered *Miranda* warnings to defendant, after which defendant gave a 20-minute statement to the officer. The trial court found that "[a]bout 99% of the interview was about drug activity in the community. About two sentences involved [defendant's] use of methamphetamine that day." The trial court made no further express findings of fact.

Plaster submitted defendant's videotaped statement to the district attorney, and defendant was thereafter charged with possession of methamphetamine. Before trial, defendant moved to suppress his statements to Plaster on the ground that those statements were not voluntarily made.[2]

---

[1] Defendant testified that Lillie threatened him with two years' imprisonment if defendant did not provide useful information to the police. Lillie testified that he made no threat to defendant. The trial court made no finding of fact concerning the alleged threat.

[2] Defendant also moved to suppress the urine sample obtained by Lillie. The trial court denied that motion and defendant does not challenge that ruling.

The trial court granted defendant's motion. After reciting the findings summarized above, the trial court explained its decision as follows:

"[M]r. Lillie had reasonable grounds to request a urine sample of [defendant] on January 28th. The results would not be suppressed. The statements which [defendant] made will be suppressed. The context in which those statements were given was that this was the first step for [defendant] in getting out of his drug problem. *Although he was given his rights*, he was not specifically advised that in addition to being used [to stop] drug trafficking, the statements might be used to prosecute [defendant]. Unless specifically told that both purposes could apply, the statements would not be admissible against him in a new criminal prosecution." (Emphasis added.)

On appeal, the state argues that the trial court's legal conclusions were erroneous in two respects. First, the state contends that the court's implicit conclusion that *Miranda* warnings were required in this setting was mistaken. Second, the state asserts that, even if such warnings were required, no supplemental special warning was necessary in order to safeguard the voluntariness of defendant's ensuing statements. Defendant responds that the trial court correctly concluded that defendant's statements were involuntary.

The dispositive issue on appeal is whether defendant's statements to Plaster were voluntary under Article I, section 12, of the Oregon Constitution, and under the Fifth Amendment to the United States Constitution. Under both federal and Oregon law, the state must prove the voluntariness of a defendant's statement by a preponderance of the evidence. *State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991). When there is evidence in the record to support the trial court's findings of fact relating to voluntariness, those facts bind us on review. *Id.* at 135. The court's findings may be express or implied. *State v. Burr*, 136 Or App 140, 145, 901 P2d 873, *rev den* 322 Or 360 (1995). We are not bound by the trial court's ultimate holding that defendant's statements were involuntary; we assess anew whether the facts suffice to meet constitutional standards. *Stevens*, 311 Or at 135; *State v. Warner*, 284 Or 147, 157, 585 P2d 681 (1978). With the

foregoing standards in mind, we turn to the state's claims of error.

As noted, the state first contends that *Miranda* warnings were not required because the circumstances of defendant's questioning by the police were not compelling. We need not decide that issue, however, because the trial court expressly found that the advice of rights was given; that finding is supported by Plaster's undisputed testimony. Among the warnings given was the advice that anything defendant said to Plaster could be used against defendant in a court of law. We therefore need not resolve the abstract question of whether what was done was also necessarily done.

■ The overriding difficulty in this case arises from the state's second claim of error that the trial court mistakenly ruled that, in order to render defendant's statements voluntary, the officer was required to reinforce the *Miranda* warnings by advising defendant that his statements could be used against him in a new criminal prosecution. The court apparently discerned a meaningful difference between the ordinary *Miranda* warnings given by the officer and the warning that it concluded should have been given. Although its reasoning is not explicit, the court may have believed that defendant's discussion with Lillie led defendant to conclude that, as a result of his current drug use, he might be at risk for a probation violation sanction but not a new criminal charge. Therefore, the court may have concluded that defendant should have been expressly told that his statements could be used against him in a new prosecution.

The trial court's decision implies that a reinforced warning *would* have made defendant's statements voluntary under the circumstances of this case. That conclusion, however, is at odds with the rule that alternative or enhanced warnings should not generally be required on practical grounds. *See State v. Sparklin*, 296 Or 85, 89, 672 P2d 1182 (1983) (at least as long as the text of the federal *Miranda* warnings remains the law, the convenience of a single text exceeds any gain from improving that text);[3] *State v. Olson*,

---

[3] A confession may be involuntary under the Oregon Constitution even if *Miranda* warnings are given. *State v. Smith*, 301 Or 681, 700, 725 P2d 894 (1986).

83 Or App 516, 731 P2d 1072 (1987) (suppression reversed where trial court held that the defendant must be advised that he may terminate questioning at any time, because such a warning exceeds *Miranda* requirements and full *Miranda* warnings were given). There have been exceptional cases in which the courts have required enhanced warnings where, for example, the defendant has psychiatric problems,[4] but no such circumstances appear from the trial court's findings or otherwise in the record in this case. The trial court did not find that anything Plaster said or did caused defendant to incriminate himself. Moreover, the trial court made no findings concerning the effect that Lillie's conduct had on defendant's ability to avoid self-incrimination. Notably, the court did not implicitly or explicitly accept defendant's testimony, which was disputed by the state, that Lillie threatened defendant with prison if he refused to cooperate with a community drug investigation.

Despite the trial court's silence on the foregoing issues, we might ordinarily assume that the court found that Lillie made threats sufficient to render defendant's statements involuntary because those facts, if found to be true, would support its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). However, that assumption is not logically consistent with the conclusion that the trial court *did* reach—that a specific reinforcement of a portion of the *Miranda* warnings would have made defendant's statements voluntary. If defendant's self-incriminating statements were the product of a threat of revocation of probation and imprisonment, then the state concedes that a rephrased *Miranda* warning would not overcome the taint of that threat. ORS 136.425(1).[5] *See also Minnesota v. Murphy*, 465 US 420, 435, 104 S Ct 1136, 79 L Ed 2d 409 (1984) (If the state, either

---

However, that possibility does not mean that modified versions of the warning should be required in order to verify voluntariness except in unusual cases.

[4] *See, e.g., State v. Mains*, 295 Or 640, 645, 669 P2d 1112 (1983).

[5] ORS 136.425(1) provides, in part:

"A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats * * *."

ORS 136.432 does not repeal preexisting statutory rules of exclusion, such as ORS 136.425(1). *State v. Thompson-Seed*, 162 Or App 483, 986 P2d 732 (1999).

expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, then a probationer's resulting statements would be compelled and inadmissible in a criminal prosecution.). Accordingly, we may not assume that the court made implied findings that are inconsistent with its own conclusion.

■■ Defendant further contends that Lillie's suggestion that he talk to the police amounted to a promise of lenient treatment or immunity from prosecution. Defendant relies on *State v. Ely*, 237 Or 329, 334, 390 P2d 348 (1964), in which the Supreme Court held that a confession extracted from a teacher by school officials after telling him that they and the victim's parents did not intend to prosecute was involuntary, although the officials warned the defendant that they could not guarantee immunity. We reject defendant's argument for two reasons. First, the trial court made no finding that Lillie promised leniency or immunity to defendant in exchange for self-incriminating statements. The court's findings establish only that Lillie suggested that defendant consider becoming an informant, not that he should personally admit to criminal conduct. The court's silence on the subject is especially meaningful in light of the principal factual distinction between this case and *Ely*. Here, unlike the circumstances in *Ely*, defendant was not asked to *confess* to anything. Second, if the court had implicitly found that defendant's statements about his own drug use were produced by a promise of leniency or immunity, then his statements related to that use would be inadmissible *as a matter of law* under Article I, section 12, of the Oregon Constitution. *Id.* at 332; *State v. Aguilar*, 133 Or App 304, 307, 891 P2d 668 (1995). Therefore, the administration of a further *Miranda*-like warning could not, contrary to the court's implied conclusion, have cured the state's breach of promise. Once again, we decline to assume that the court made unstated findings that contradict its plainly implied conclusion that a further warning would have made defendant's statements voluntary.

In conclusion, there is simply nothing in the trial court's findings that explains or supports its ultimate holding that defendant's statements were involuntary and that Plaster's failure to administer a further warning was a make or break factor in that determination. Because the trial court

did not make findings of fact regarding the disputed evidence that Lillie threatened defendant with imprisonment and whether any such threat produced his self-incriminating statements, we are unable to say whether or not the trial court's determination of voluntariness was ultimately correct. In light of that conflicting evidence, we reverse and remand for redetermination by the trial court of the voluntariness of defendant's statements.

Reversed and remanded.